EDWIN A. LOMBARD, Judge.
 

 Bin this insurance subrogation claim, Plaintiff, Safeway Insurance Company (“Safeway”), appeals the judgment of the trial court which granted summary judgment to Defendants, Premier Automotive Superstore (“Premier”) and Federated Mutual Insurance Company (“Federated”). For the reasons set forth below, the decision of the trial court granting the motion for summary judgment is reversed and Safeway’s subrogation claim is remanded for further proceedings.
 

 Relevant Facts and Procedural History
 

 This matter originally arose out of a two-vehicle automobile accident that occurred on April 26, 2003, on Interstate 10 in Orleans Parish, Louisiana. On the day of the accident, Otto Clark (“Clark”), a part-time maintenance worker for Premier, was driving a Ford Ranger owned by Premier when the front tire of the vehicle suddenly came off, causing Clark to lose control of the vehicle, strike a guardrail, and cross into the path of an oncoming vehicle being driven by Effie Thomas (“Thomas”). As a result of the accident, Thomas and the occupants of Clark’s vehicle suffered from physical injuries.
 

 At the time of the accident, Clark was insured under an automobile liability insurance policy issued by Safeway, and pursuant to this policy, Safeway made | ^payments to Thomas and some of the occupants of Clark’s vehicle in the amount of it policy limits of $20,000.
 
 [1]
 
 Safeway subsequently filed a Petition for Subrogation wherein it demanded reimbursement from Premier and Federated, alleging that the policy issued to Premier by Federated was primary to the policy it issued to Mr. Clark.
 

 Premier and Federated filed a Motion for Partial Summary Judgment arguing that the Ford Ranger was clearly a “loaner vehicle” within the meaning of La. R.S. 22:1291 and that statute specifically provides that the insurance of the driver is primary. Premier and Federated further argued that, pursuant to a “loaner agreement” signed by Clark, Clark agreed that his personal automobile insurance policy would be primary to any policy of insurance covering Premier. Without rendering oral or written reasons, the trial court granted the motion dismissing Safeway’s claims against Premier and Federated with prejudice. This appeal followed.
 

 Law & Discussion
 

 An appellate court reviews a district court’s decision to grant a motion for summary judgment
 
 de novo,
 
 using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Generally, material facts are those that potentially ensure or preclude recovery, paffect the litigant’s ultimate success, or determine the outcome of a legal dispute.
 
 Prado v. Sloman Neptun Schiffahrts, A.G.,
 
 611 So.2d 691, 699 (La.App. 4 Cir.1992). A summary judgment may be rendered on the issue of insurance coverage alone, al
 
 *239
 
 though there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E).
 

 On appeal, Safeway argues that the trial court erred in granting the motion for summary judgment because there are genuine issues of material fact in dispute that preclude summary judgment. Safeway contends that there are genuine issues of material fact as to whether the loaner agreement even exists and whether Clark had permission to use the Ford Ranger at the time of the accident. Safeway further argues that the Ford Ranger is not a “loaner vehicle” pursuant to the definition contained in La. R.S. 22:1291. Finally, Safeway argues that even if the loaner agreement is valid and enforceable, nowhere in its terms does it provide that Clark’s insurance will be primary to any insurance issued by Federated.
 

 Safeway first argues that a genuine issue of material fact exists as to whether the loaner agreement exists. In support of this argument, Safeway points to the fact that the “loaner agreement,” which is dated April 21, 2003, and is signed by Clark and Charles Sherman, Premier’s general manager, did not appear until four years after the accident. Moreover, in a July 2004 affidavit attached to a prior summary judgment filed by Federated in this case, Charles Sherman makes no mention of any loaner agreement. Rather, at that time, Sherman attested that Clark had no permission to use the vehicle, and that under the terms of Premier’s automotive liability insurance policy, Clark would only be insured under the Federated policy if the vehicle is being used with permission. Safeway finds this very suspicious and thus, questions whether the loaner agreement even exists.
 

 | ¿The loaner agreement was attached as evidence to Premier and Federated’s motion for summary judgment and clearly exists. Although it may be suspicious that the agreement just recently came to light, Safeway has not challenged Clark’s consent to the agreement nor the authenticity of' the signatures contained therein. Therefore, we find no genuine issue of material fact as to the authenticity or validity of the loaner agreement.
 

 Safeway also argues that a material fact is at issue regarding whether Clark had Premier’s permission to use the vehicle at the time of the accident. According to Safeway, this fact is material because it relates to whether the Federated policy provides
 
 any
 
 coverage for the accident, whether it be primary or secondary. Safeway points to a discrepancy in the affidavits in this case to show that the issue of whether Clark had permission to use the Ford Ranger is disputed by the parties. In his July 2004 affidavit, Sherman stated that Clark did not have permission to use the Ford Ranger at the time of the accident and, without such permission, there is no insurance coverage via the Federated policy, making Safeway the only insurer liable. In his July 2008 affidavit, Sherman states that even if Clark did have Premier’s permission to use the vehicle, the vehicle was clearly a “loaner vehicle” under 22:1291 and that statute clearly provides that the insurance of the driver is primary. In Clark’s affidavit, which is attached to Safeway’s opposition to the summary judgment, Clark states that he had permission to use the vehicle as a condition of his employment and was on a mission for his employer at the time of the accident.
 

 This issue of whether Clark had permission to use the vehicle at the time of the accident is clearly contested and is material to the matter at hand. Thus, if Clark had no permission to use the vehicle at the time of the accident, then he | Rwould not be covered by the Federated policy at all. In that case, Premier and Federated would
 
 *240
 
 be entitled to summary judgment since only the Safeway policy would apply to the accident. However, if Clark did have permission to use the Ford Ranger at the time of the accident, then the Federated policy would provide coverage. In that event, Premier and Federated would be entitled to summary judgment only if 22:1291 is applicable to this case. Accordingly, the trial court erred in granting summary judgment and dismissing Premier and Federated from this case with this genuine issue of material fact in existence.
 

 Although the existence of this genuine issue of material fact is enough to preclude summary judgment, Safeway also provides two additional arguments against summary judgment that relate to the loaner agreement between Premier and Clark. First, Safeway argues that the trial court erred in concluding that the loaner agreement was governed by 22:1291, since the Ford Ranger does not fit the definition of a loaner vehicle in the statute. Safeway further argues that if 22:1291 does not apply in this case, then there is a genuine issue of material fact as to ranking of coverage, since the terms of the loaner agreement do not provide that Clark’s personal automobile insurance policy will be primary.
 

 These arguments have merit. First, despite the fact that the agreement is entitled a “loaner agreement” and the Ford Ranger is referred to as the “loaner vehicle,” the facts in the record support Safeway’s argument that the Ford Ranger that Clark was driving at the time of the accident does not fit the definition of a “loaner vehicle” as contemplated by 22:1291. 22:1291 defines a “loaner vehicle” as “any vehicle which is provided to an insured driver by a vehicle sales or service dealer for his temporary use as a replacement vehicle while the insured’s vehicle is being serviced or repaired.” La. R.S. 22:1291(B)(1). The statute also provides, | fi“[t]he term shall also mean any vehicle which is provided to an insured driver by a vehicle service or sales dealer for the purpose of allowing the driver to demonstrate or test drive the vehicle.”
 
 Id.
 

 In his affidavit, Clark states that, as a condition of his employment, he was given a vehicle each night to take home, he was authorized to use the vehicle for his own use after working hours and, at the time of the accident, he was on a mission to pick up a floor buffer for the dealership. It is clear from this affidavit that Clark was not operating the Ford Ranger because his personal vehicle was being repaired or serviced or for purposes of test driving the vehicle. Rather, Clark was given use of the vehicle by Premier as a condition of his employment. Moreover, Clark was not a customer of Premier, but was, rather, a contract worker for Premier.
 

 Premier and Federated argue that even though the Ford Ranger may not meet the definition of a “loaner vehicle” under 22:1291, this statute nevertheless mandates there be primary coverage under the Safeway policy in order to effectuate legislative will. We disagree. The legislative intent behind 22:1291 was to protect automobile dealerships and service providers from liability for accidents that occur when a customer, to whom which it has loaned a vehicle, is using the vehicle while his or her own vehicle is being repaired or while the customer is test driving the vehicle. Here, despite the fact that the loaner agreement refers to the Ford Ranger as the “loaner vehicle,” it was clearly not a “loaner vehicle” as contemplated by the legislature or 22:1291. Accordingly, because 22:1291 is not applicable to the circumstances of this case, the ranking of policies as mandated by that statute is not applicable, either.
 

 
 *241
 
 |7FinaIly, Safeway argues that even if the court finds that the .loaner agreement is a valid and enforceable contract, nowhere in the “loaner agreement” does Clark agree that his insurance (through Safeway) will be primary to any policy issued by Federated. We agree.
 

 The loaner agreement, which was allegedly signed by Clark provides only.
 

 I have a valid insurance policy with company — Safeway, agent: ABC Insurance, phone: 242-0213, which will provide coverage for any and all damages, caused by or to the above described loaner vehicle.
 

 Directly below this language, under the heading LOUISIANA LAW, is a recitation of statute 22:1291 as it pertains to ranking of coverage.
 

 As Safeway correctly points out, nowhere in the agreement is any language stating that Clark agrees that the Safeway policy is primary to any other insurance policy which might have provided coverage to Clark while operating the vehicle, including the Federated Policy issued to Premier. All it provides is that Clark has a policy with Safeway that would provide coverage. Moreover, the inclusion of statute 22:1291 on the face of the agreement is of no moment, since the Ford Ranger does not fit 22:1291’s definition of a loaner vehicle and because Clark does not agree in the loaner agreement that 22:1291 is applicable to the contract or that his insurance policy will be primary. Thus, the loaner agreement does nothing to aid in the determination of which policy will be primary in this case.
 

 Because there are no written reasons for judgment, nor transcripts in the record, it is unclear why the trial court granted Premier and Federated’s motion for Summary Judgment. However, we find that there are material facts at issue as to whether Clark had permission to use the vehicle at the time of the accident, whether the Ford Ranger was, in fact, a loaner vehicle as contemplated by 22:1291, |sand which policy, if any, is primary. These factual issues must be determined at trial.- Therefore, the trial court erred in granting Premier and Federated’s motion for summary judgment and dismissing them from this case. Accordingly, the trial court’s decision granting Premier and Federated’s motion for partial summary judgment is reversed and the matter is remanded to the trial court for further proceedings.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . A separate suit filed by Camela Stimage, once of the passengers in Clark’s vehicle, against various defendants, including Safeway, Premier and Clark, is currently pending before the district court. That case has been consolidated with the instant matter and that record is part of the appellate record before us.